Jeremiah W. **HOLDER**, Petitioner–Appellant,

v.

Carla R. **HOLDER**, Respondent–Appellee.

Jeremiah W. Holder, Petitioner–Appellee,

v.

Carla R. Holder, Respondent–Appellant.

Nos. 01–35467, 01–35519.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2002.

Filed Sept. 6, 2002.

Rhea J. Rolfe, Edmonds, WA, for the petitioner-appellant-cross-appellee.

A. Chad Allred, Seattle, WA, for the respondent-appellee-cross-appellant.

Before D.W. NELSON, THOMPSON and PAEZ, Circuit Judges.

## OPINION

PAEZ, Circuit Judge.

Jeremiah W. Holder ("Jeremiah"), a member of the United States Air Force stationed in Germany, appeals the order of the district court staying his petition for return of his children from Washington State to Germany under the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"), Oct. 25, 1980, 19 I.L.M. 1501, as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610. Jeremiah had previously commenced divorce and custody proceedings against Carla R. Holder ("Carla"), the children's mother, in California state court. As a result of those pending state court proceedings, the district court stayed the action pending resolution of Jeremiah's state court appeal, invoking *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Carla cross-appeals the district court's denial of her request for attorney's fees and costs.

We conclude that the district court should have promptly adjudicated Jeremiah's Hague Convention petition in accordance with the purposes of the treaty and its implementing legislation. The Hague Convention seeks to prevent an abducting parent from gaining any advantage in litigation by providing the left-behind parent with an expeditious avenue for seeking return of the abducted child *in addition* to those remedies available under the local laws of the country to which the child has been taken. With those purposes in mind, we conclude that Jeremiah's decision to file for custody in state court in California, but bring his Hague Convention petition in federal court in Washington, does not now mean that he is barred from raising them in federal court by the preclusive effect of the state court judgment or that he has waived his rights under the Hague Convention.

Thus, we hold that the district court abused its discretion in staying proceedings under *Colorado River*. In this Circuit, the narrow *Colorado River* doctrine requires that the pending state court proceeding resolve all issues in the federal suit. Here, this dispositive requirement is not met because the issues in a suit under the Hague Convention case will not be resolved by a state court custody suit in which no Hague Convention claim is raised. On balance, other *Colorado River* factors also weigh against staying proceedings in this case.

Because we vacate the district court's order staying proceedings pending the outcome of Jeremiah's state court appeal and remand for expeditious adjudication of his Hague Convention claim, we also vacate the district court's denial of Carla's motion for attorney's fees on the grounds that it is premature.

## I. BACKGROUND

### A. THE HAGUE CONVENTION AND ICARA

The Hague Convention is a multilateral international treaty on parental kidnapping to which the United States and Germany are signatories. The Convention's preamble describes the signatories as "[d]esiring to protect children internationally from the harmful effects of their wrongful removal." Hague Convention,

Oct. 25, 1980, preamble, 19 I.L.M. 1501, 1501. "These harmful effects may occur either through the 'removal [of a child] from its habitual environment,' or by 'a refusal to restore a child to its own environment after a stay abroad.'" *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir.2001) (quoting Elisa Perez–Vera, Explanatory Report¶ 11, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982)).

The Convention seeks to deter parental abductions by "depriv[ing the abductor's] actions of any practical or juridical consequences," and thus eliminating the "primary motivation" for the abduction—to obtain an advantage in custody proceedings by commencing them in another country. *Mozes*, 239 F.3d at 1070 (citations and internal quotation marks omitted). Article 12 therefore provides that when a child is removed from one signatory nation to another, the latter "shall order the return of the child forthwith." Hague Convention, art. 12, 19 I.L.M. at 1502; *accord Mozes*, 239 F.3d at 1069. Article 16 provides that "until it has been determined that the child is not to be returned under the Convention," the state to which the child has been removed "shall not decide on the merits of rights of custody." Hague Convention, art. 16, 19 I.L.M. at 1503. Article 17 provides that "[t]he sole fact that a decision relating to custody has been given in or is entitled to recognition in the [country to which the child has been taken] shall not be a ground for refusing to return a child under this Convention. . . ." *Id.*, art. 17, 19 I.L.M. at 1503.

ICARA, 42 U.S.C. §§ 11601–11610, implements the Hague Convention in the United States. ICARA vests state and federal courts with concurrent jurisdiction over claims under the Convention. 42 U.S.C. § 11603(a). ICARA also provides that "[t]he remedies established by the Convention and this chapter shall be in addition to remedies available under other laws or international agreements." 42 U.S.C. § 11603(h); *see also* Dep't of State, Hague International Child Abduction Convention Text and Legal Analysis, 51 Fed. Reg. 10494, 10507–08 (Mar. 26, 1986) [hereinafter Convention Text and Legal Analysis] ("Under Article 29 a person is not precluded from seeking judicially-ordered return of a child pursuant to laws and procedures other than the Convention. Indeed, Articles 18 and 34 make clear that nothing in the Convention limits the power of a court to return a child at any time by applying other laws and procedures conducive to that end.").

## B. FACTS AND PROCEDURAL HISTORY

In this Hague Convention case, Jeremiah seeks the return of his two children to Germany from the United States.

Jeremiah and Carla are both United States citizens. They met in California and were married there in March 1994. Their son Jordan was also born in California in October 1994, and their son Kyle was born there in July 1999. In November 1994, Jeremiah entered the United States Air Force. The family lived in Texas while Jeremiah attended basic training and technical school, and then returned to California in June 1995. The family moved to Japan for overseas duty for two years in 1995, returning to California in August 1997. According to Jeremiah, the difficulties in his marriage became severe during the time that he was stationed in Japan. It was while they were in Japan that Carla raised the possibility of divorce and that the couple began marriage counseling.

In December 1998, the Air Force notified Jeremiah that he had been assigned to a post in Germany for a minimum of four

years. Jeremiah states that this was a permanent duty post and that he had to reenlist for another six years to accept the post. Around September 1, 1999, Carla and the two boys joined Jeremiah in Germany. The family lived in base housing and Jordan attended kindergarten on-base.

In April 2000, Jeremiah and Carla made plans for Carla to travel with the boys to Washington, where Carla's parents had moved from California. They bought round-trip tickets for Carla and the two boys departing on May 5 with return dates of June 19. Jeremiah contends that he expected Carla to return with the children to Germany on June 19, but Carla contends that she and Jeremiah agreed that she would remain in Washington with the children because of the couple's marital difficulties.

Jeremiah alleges that, on or around three days after Carla and the children arrived in Washington, Carla told him that she and the children would not be returning to Germany. He states that he attempted to "persuade Carla to change her mind," but realized that it was futile when Carla told him to communicate with her through her attorney.

Jeremiah alleges that he then began to explore various legal options to accomplish Carla's and the children's return to Germany. He stated that he hoped that her return would allow them to resolve their marital problems and to "come to a reasonable settlement of their differences."

He alleges that around this time, a base attorney advised him that German courts "did not get involved in civil matters regarding family law," and that he should file for divorce in California. Jeremiah did not consult with a German attorney at this time.

On June 27, 2000, Jeremiah filed for divorce and child custody in family court in California. Jeremiah requested joint legal custody with him as the primary caretaker and with the children to live with him in Germany. Carla then filed for divorce, child custody, and a restraining order in Washington, and moved to dismiss the California proceedings for lack of jurisdiction.

In response to Carla's motion to dismiss, Jeremiah defended jurisdiction in California under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), as codified in California Family Code §§ 3400–3462. He also stated that he "believe[d] that the German courts [would] not accept a family law case between two U.S. citizens who are in that country on military assignment," and argued that "[t]his [California court] is the only court that can decide all issues." Carla eventually stipulated that jurisdiction was proper in California and dropped her motion to dismiss.

The California court ordered the parties to mediate the issue of child custody. Jeremiah states that at the time of the mediation on August 9, 2000, he had not seen his children in several months and "very much wanted to see them." Although he felt that the mediation was "very unfair," he agreed to the visitation schedule proposed by the mediator because he thought that it was "all I was going to get from this mediator."[1] On August 9, 2000, the court entered "custody and visitation orders ... based upon the combined agreement of the parties and recommendation of the Mediator/ Evaluator," providing for joint legal custody,

---

1. Jeremiah also submitted his own "Minutes" of the mediation to the district court, but the Magistrate Judge refused to consider them, finding the document to be unauthenticated and hearsay.

with the children to remain with Carla in Washington.

Jeremiah obtained a new attorney and filed a motion for reconsideration on August 18, 2000. He urged the court to find that California had no jurisdiction over child custody under the UCCJEA, because Germany, not California, was the children's "home state" under that statute. Jeremiah did not raise a Hague Convention claim in this motion. He also declares that, on August 29, 2000, he filed an application for return of the children under the Hague Convention with the United States Central Authority, an administrative agency called for by the Hague Convention and created by ICARA, 42 U.S.C. § 11606.

At the October 2, 2000 hearing on the motion for reconsideration, Jeremiah's attorney informed the state court that Jeremiah's Washington counsel intended to pursue a Hague Convention claim in that state, and that the Hague Convention was not a subject of litigation in the California proceeding. In response, the state court stated that the Hague Convention claim "may be peripheral to what we're going to discuss today[,]" and "appears to me to be proceeding on a separate track than this [case]," but also stated that he would allow Carla's attorney to raise related points "to the extent that [she] wishes to reference it, because I believe that it has been raised." The court also stated that the Convention was unlikely to affect its determination of Jeremiah's motion. Jeremiah's attorney stated that he was unprepared to argue the Hague Convention issue and instead argued that the court lacked jurisdiction under the UCCJEA because Germany, not California, was the children's "home state."

The state court denied Jeremiah's motion for reconsideration, finding that California was the children's home state under the UCCJEA, and without making any findings under the Hague Convention.

Jeremiah appealed to the California Court of Appeal. Later in the course of that proceeding, the California Court of Appeal invited the United States to file a brief as amicus curiae, and the United States did so.

On November 14, 2000, Jeremiah filed the instant Hague Convention petition in federal court in the Western District of Washington. On November 21, 2000, Jeremiah moved the California state court for a stay of all custody proceedings pending the outcome of this petition. On December 19, 2000, the court stayed the action regarding issues of child support, spousal support, and attorney's fees. But the court entered modified custody and visitation orders "based on the combined agreement of the parties and recommendation of the Mediator/Evaluator" that permitted visitation by Jeremiah over the Christmas holiday and an uninterrupted period of care by Carla from July 20, 2001 until August 10, 2001.

On February 14, 2001, a United States Magistrate Judge recommended that the federal district court stay the federal proceedings in light of the pending California state court proceedings. He concluded that, once the state court judgment became final, it would likely preclude Jeremiah's federal Hague Convention claim, and that "wise judicial administration" counseled a stay under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The district court adopted the Magistrate's Report and Recommendation and stayed the federal proceedings on April 16, 2001. Jeremiah timely appealed on May 15, 2001.

Before this case was argued and submitted on April 3, 2002, the California Court of Appeal for the Fifth Appellate District ruled on Jeremiah's appeal in an unpublished opinion, rejecting his allegations

that California lacked jurisdiction over his custody petition, and that, even if California had jurisdiction, the state trial court was nevertheless obligated to stay custody proceedings under the Hague Convention. *Holder v. Holder (In re Marriage of Holder)*, 2002 WL 443397 (Cal.Ct.App. Mar.20, 2002) (unpublished disposition). Following oral argument, the parties notified us that the California Court of Appeal decision became final on May 20, 2002.

## II. APPELLATE JURISDICTION & STANDARD OF REVIEW

■■ The district court's order staying proceedings pending the resolution of the state court appeal is appealable as a final order under 28 U.S.C. § 1291. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 8–13, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir.1993). We review for abuse of discretion the district court's decision to stay proceedings under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *Intel*, 12 F.3d at 912; *Nakash v. Marciano*, 882 F.2d 1411, 1413 (9th Cir.1989). The abuse of discretion standard that we use in such cases is stricter, however, "than the flexible abuse of discretion standard used in other areas of law." *Intel*, 12 F.3d at 912. "When a stay for reasons of 'wise judicial administration' [under *Colorado River*] is contemplated, 'discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved.... [T]here is little or no discretion to abstain in a case which does not meet traditional abstention requirements.'" *Id.* (quoting *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 540 (9th Cir.1985)) (second alteration in original). Thus, the district court's discretion "must have been exercised within the 'exceptional circum-stances' limits of the *Colorado River* doctrine." *Travelers Indem. Corp. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir.1990).

■■ Questions of claim and issue preclusion are reviewed de novo. *Frank v. United Airlines*, 216 F.3d 845, 849–50 (9th Cir.2000), *cert. denied*, 532 U.S. 914, 121 S.Ct. 1247, 149 L.Ed.2d 154 (2001). We also review de novo the district court's conclusions of law, *Cacique v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir.1999), including those regarding the interpretation of federal and state statutes and of federal treaties. The district court's decision to deny attorney's fees is reviewed for abuse of discretion. *Shaw v. City of Sacramento*, 250 F.3d 1289, 1293–94 (9th Cir. 2001).

## III. DISCUSSION

■ We conclude that the district court erred in staying proceedings. In light of the Hague Convention policy that signatory countries should return wrongfully removed children expeditiously and through any appropriate remedy, we reject the claim that a left-behind parent is precluded or barred from raising his Hague Convention claim in the court of his choice, or that "wise judicial administration" is furthered by staying a federal Hague petition, simply because that left-behind parent has pursued the return of his children through multiple legal avenues.

## A. CLAIM PRECLUSION

■ The district court erred in ruling that the California Court of Appeal decision would be entitled to preclusive effect when it became final. Such a holding undermines the purposes of the Hague Convention and ICARA, and is contrary to our prior decision in *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir.2001).

Federal courts give preclusive effect to state court judgments to the extent required by statute and by the res judicata principles embodied in federal common law. *See* 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4469 (2d ed.2002). In situations in which federal courts apply 28 U.S.C. § 1738,[2] the generic full faith and credit statute, they generally give state court judgments the same res judicata effect that they would be given by another court of that state. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *accord Bybee v. A–Mark Precious Metals, Inc. (In re Bybee)*, 945 F.2d 309, 316 (9th Cir.1991) ("[T]he res judicata effect of a previous state court judgment is determined by the law of the rendering court.").

Here, the district court held that, because Jeremiah failed to raise his Hague Convention claim in state court in California, a final judgment from that state court would bar Jeremiah from raising his Hague Convention claim in federal court. In California, a final judgment, "even if erroneous," acts as a bar to all other claims arising from the "invasion of one primary right," that is, to all other claims arising from the same injury. *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1438 (9th Cir.1985). This bar applies whether or not the claim was actually adjudicated in the prior proceeding, *Thibodeau v. Crum*, 4 Cal.App.4th 749, 6 Cal.Rptr.2d 27, 29 (1992), and, under California's compulsory cross-complaint rules, it applies to defendants as well as to plaintiffs, *Morris v. Blank*, 94 Cal.App.4th 823, 114 Cal.Rptr.2d 672, 677–78 (2001).

The district court erred, however, in applying general res judicata principles in this context. We have recognized that, in some cases, "the implementation of federal statutes representing countervailing and compelling federal policies justifies departures from a strict application" of general res judicata principles. *Red Fox v. Red Fox*, 564 F.2d 361, 365 n. 3 (9th Cir.1977); *accord American Mannex Corp. v. Rozands*, 462 F.2d 688 (5th Cir. 1972). The Hague Convention and ICARA present such a case, as is evident both from the particularized full faith and credit provision in ICARA, 42 U.S.C. § 11603(g), and the overall statutory scheme that the Hague Convention and ICARA establish.

Section 11603(g) provides that federal courts adjudicating Hague Convention petitions must accord full faith and credit only to the judgments of those state or federal courts that actually adjudicated a Hague Convention claim in accordance with the dictates of the Convention and ICARA:

> Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, *pursuant to the Convention, in an action brought under this chapter.*

42 U.S.C. § 11603(g) (emphasis added); *see also Ostevoll v. Ostevoll*, 2000 WL 1611123, at *18 (S.D.Ohio 2000) ("At the time of the [state] court's [custody] decision, no Hague Petition was before the [state] court, nor did the state court order the return of the children pursuant to the Hague Convention, thus, we are not re-

---

**2.** Section 1738 provides that the judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

quired under 42 U.S.C. § 11603(g) to accord the decision preclusive effect.").

■ It would also undermine the very scheme created by the Hague Convention and ICARA to hold that a Hague Convention claim is barred by a state court *custody* determination, simply because a petitioner did not raise his *Hague Convention* claim in the initial custody proceeding. The Hague Convention provides that children are not automatically removed from its protections by virtue of a judicial decision awarding custody to the alleged abductor. *E.g.,* Hague Convention, art. 17, 19 I.L.M. at 1503. Indeed, the typical Hague Convention case involves at least the potential for two competing custody orders, one in the children's "habitual residence," and one in the country to which the children have been taken. To hold that a left-behind parent is barred, in such a case, from raising a Hague Convention claim in a subsequent federal proceeding just because he or she did not raise it in the state custody proceeding would render the Convention an incompetent remedy for the very problem that it was ratified to address.

Such a holding would also contravene our holding in *Mozes*. In *Mozes*, we held that the *Rooker–Feldman* doctrine[3] would not bar a federal district court adjudicating a Hague Convention proceeding from vacating a state court's custody order or its order enjoining removal of the child from its jurisdiction: "Congress has expressly granted the federal courts jurisdiction to vindicate rights arising under the Convention. Thus, federal courts must have the power to vacate state custody determinations and other state court orders that contravene the treaty." 239 F.3d at 1085 n. 55 (citation omitted). It

clearly follows that, if a prior state court custody order cannot bar a federal court from vacating the state court order, then it cannot bar federal adjudication of the Hague Convention claim.

■ The fact that Jeremiah, not Carla, filed for custody in state court does not compel a different result in this case. This is true, first, because there is nothing in general claim preclusion law or in § 11603(g) that suggests that this type of distinction would be appropriate. Second, under the Hague Convention and ICARA, Jeremiah may choose to bring his Hague Convention claim in either federal *or* state court, *see* 42 U.S.C. § 11603(a), and he may pursue his remedies under *both* the Convention and state law, *see, e.g.,* 42 U.S.C. § 11603(h); Hague Convention, art. 18, 19 I.L.M. at 1503; Hague Convention, art. 29, 19 I.L.M. at 1504; Hague Convention, art. 34, 19 I.L.M. at 1504; Convention Text and Legal Analysis, 51 Fed.Reg. at 10507–08.

■ We also reject the argument that we must accord full faith and credit to the California custody determination under the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A ("PKPA"). PKPA requires state courts to give full faith and credit to the custody determinations of other states. *See* 28 U.S.C. § 1738A(a). We might apply PKPA standards if, under § 1738, we were giving the custody determination the same preclusive effect that it would have in California. Here, however, we are applying the particularized full faith and credit provision of 42 U.S.C. § 11603(g). Because nothing in PKPA suggests that its provisions apply independently to federal courts, we need not interpret it in a way that is inconsistent with

---

**3.** *See generally Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v.*

*Feldman,* 460 U.S. 462, 486–87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

the express command of § 11603(g). *See Thompson v. Thompson*, 798 F.2d 1547, 1553 (9th Cir.1986) ("[N]owhere in the statute is it stated or implied that the obligations imposed by section 1738A are to be imposed upon federal courts ...."), *aff'd*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). Furthermore, the PKPA was enacted to discourage parental kidnapping across state lines within the United States, much like the Hague Convention seeks to deter parental kidnapping internationally. *See Thompson v. Thompson*, 484 U.S. 174, 182, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). It would be illogical, therefore, to interpret the PKPA in a way that would undermine the purposes of the Hague Convention and eviscerate the remedy that the Convention provides.

■ [6] Because we determine that federal courts adjudicating petitions under the Hague Convention must accord preclusive effect only to those state court judgments ordering or denying the return of a child pursuant to the Hague Convention in an action under ICARA, we do not address whether the district court correctly applied California res judicata principles.

## B. ISSUE PRECLUSION

■ Carla argues that even if Jeremiah's petition is not barred by claim preclusion principles, then issue preclusion principles nevertheless dictate that we must give the California Court of Appeal judgment preclusive effect on the dispositive issue whether Jeremiah waived his remedies under the Hague Convention by filing for custody in state court. We disagree.

■ Decisions regarding issue preclusion are governed by the same basic framework as the decisions regarding claim preclusion discussed above. 18B Wright, Miller, & Cooper, *supra*, § 4470.2; *see also Matsushita Elec. Indus. Co v. Epstein*, 516 U.S. 367, 116 S.Ct. 873, 134

L.Ed.2d 6 (1996). Therefore, although 28 U.S.C. § 1738 requires that federal courts generally give state court judgments the same issue preclusive effect that they would be given by the rendering court, because we apply ICARA's more particularized full faith and credit provision of 42 U.S.C. § 11603(g), we do not give preclusive effect to state court adjudication of issues in a situation in which that court did not have a Hague Petition before it and did not order the return of the children pursuant to the Convention.

■■ Moreover, Carla's argument would fail even in the absence of our holding that it is inappropriate to apply 28 U.S.C. § 1738's general rule to this case. We take judicial notice of the California Court of Appeal opinion and the briefs filed in that proceeding and in the trial court and we determine that the waiver issue was not actually litigated and necessarily decided here, *see Jacobs v. CBS Broadcasting Inc.*, 291 F.3d 1173, 1177–78 (9th Cir.2002); *Lucido v. Superior Court*, 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223, 1225 (1990), notwithstanding the California Court of Appeal's comments regarding waiver and its citation of *Journe v. Journe*, 911 F.Supp. 43 (D.P.R.1995), in which a district court invoked equitable waiver principles to bar a Hague Convention claim. Jeremiah's references to his Hague Convention claim in the state trial court were made in the context only of notifying the court of his intent to file a petition in federal court, requesting that the state court stay custody proceedings, and arguing that the Hague Convention claim was *not* properly before the state court. *Cf. Silverman v. Silverman*, 267 F.3d 788, 792 (8th Cir.2001) (holding that *Younger* abstention was inappropriate because federal petitioner could not secure relief under the Hague Convention in state court where "Hague issues were raised

... only by way of support for his argument that the state court should not have ruled on the custody issue").

Furthermore, it is clear from its decision that the California Court of Appeal did not deem Jeremiah to have raised a Hague Convention claim in state court, notwithstanding its comments regarding the issue of waiver: "[A]rguments not asserted in the trial court are waived and will not be considered for the first time on appeal. We decline to consider whether The Hague Convention applies because the issue was neither considered nor ruled upon by the trial court." *Holder v. Holder (In re Marriage of Holder )*, 2002 WL 443397, at \*5 (Cal.Ct.App. Mar.20, 2002) (unpublished disposition) (internal citation omitted). It is clear from this discussion that the California Court of Appeal in fact determined that Jeremiah was *barred from litigating* the issue before it because he had failed to raise it before the trial court.

### C. COLORADO RIVER STAY

■■■ We also hold that the district court erred in concluding that it was appropriate to stay proceedings under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under *Colorado River*, considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter, *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir.1993). "[E]xact parallelism" is not required; "[i]t is enough if the

two proceedings are 'substantially similar.' " *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989) (citations omitted).

■ But because "[g]enerally, as between state and federal courts [with concurrent jurisdiction], the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[,]" the *Colorado River* doctrine is a narrow exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236 (internal citation and quotation marks omitted); *accord Intel,* 12 F.3d at 912. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court clarified that to fit into this narrow doctrine, "exceptional circumstances" must be present. 450 U.S. at 15–16, 101 S.Ct. 836; *see also Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236 ("Given [the federal court's obligation to exercise jurisdiction], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.").[4]

The district court found that it would be prudent to abstain "in the interests of comity and federalism," because the California decision would be "entitled to preclusive effect" once it became final. In addition, the court found that the state

---

4. The *Colorado River* doctrine is not technically an abstention doctrine, although it is sometimes referred to as one. *Moses H. Cone,* 460

U.S. at 14–15, 103 S.Ct. 927; *Attwood v. Mendocino Coast Dist. Hosp.,* 886 F.2d 241, 243 (9th Cir.1989).

custody proceedings were substantially similar to the federal Hague Convention proceedings "because they both address whether post-removal/retention custody of the Holder children should be determined in California or Germany[,]" and because the issue of the children's "habitual residence" under the Hague Convention "overlaps the 'home state' inquiry" under California law. The district court also found that the *Colorado River* factors weighed in favor of abstention.

We reject the reasoning of the district court and vacate its order staying the proceedings in federal court.

### 1. SUBSTANTIAL DOUBT THAT STATE CUSTODY SUIT WILL RESOLVE ALL ISSUES

Because there is substantial doubt that a final determination in the custody proceeding will resolve all of the issues in Jeremiah's federal Hague Convention petition, we conclude that the district court abused its discretion in staying proceedings. In *Intel*, we held that this was a "significant countervailing consideration that we find dispositive." 12 F.3d at 913.

> Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay.... "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this,* it would be a serious abuse of discretion to grant the stay or dismissal at all.... Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substan-

tive part of the case, whether it stays or dismisses."

*Id.* (quoting *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927) (emphasis in *Intel* ).

Jeremiah's Hague Convention claims will not be resolved by the state court proceeding. For the reasons discussed above, a state court judgment in the custody case does not bar Jeremiah from raising a Hague Convention claim in federal court. In addition, the federal district court will not be able to resolve the case simply by according preclusive effect to the state court's determination of the various issues involved in the state custody suit because the issues relevant to the adjudication of a Hague Convention petition are distinct from those relevant to a custody determination under state law.

The district court erred in determining that Jeremiah's claim for custody was substantially similar to his Hague Convention claim. As a result, the proceedings are not "parallel," as required for a stay under *Colorado River, see Nakash,* 882 F.2d at 1416, nor will an adjudication of custody on the merits resolve all necessary issues, *see Intel,* 12 F.3d at 913 n. 4 ("[T]he requirement of 'parallel' state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for all of the parties' claims.") (citation omitted).

The state court's custody determination did not resolve several of the issues critical to the disposition of a Hague Convention petition. In *Mozes,* we held that a court adjudicating a Hague Convention petition must "answer a series of four questions: (1) When did the removal or retention at issue take place? (2) Immediately prior to retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the

petitioner exercising those rights at the time of removal or retention?" 239 F.3d at 1070.

Although there may be some overlap between the second and third questions and the determinations under California law of a child's "home state," *see* Cal. Fam.Code §§ 3402, 3421, and of the best interest of the child, the Hague Convention inquiries are nevertheless distinct. In *Mozes*, we suggested that "habitual residence" has its own meaning, uniform among signatories to the Convention and distinct from local legal concepts. *See Mozes*, 239 F.3d at 1071. We also distinguished "wrongful removal" under the Hague Convention from more holistic custody inquiries regarding the best interests of the child:

> "It is important to understand that 'wrongful removal' is a legal term strictly defined in the Convention. It does not require an ad hoc determination or a balance of the equities. Such action by a court would be contrary to a primary purpose of the Convention: to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court."

*See id.* at 1073 n. 10 (quoting *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993)); *see also* Convention Text and Legal Analysis, 51 Fed.Reg. at 10509 (noting that a custody determination under the UCCJA "may not by itself" be sufficient to determine wrongfulness of removal under the Hague Convention).

Here, the parties point to no findings by the state court regarding "habitual residence" or "wrongful removal" as those terms are used in the context of the Hague Convention. It was therefore inappropriate for the district court to conclude that the proceedings were substantially similar and to stay the proceedings under *Colorado River.*

Because Jeremiah did not bring a Hague Convention claim in his state court custody proceeding, this case is distinguishable from cases in which other courts have stayed proceedings under *Colorado River* or otherwise abstained pending the outcome of proceedings in state court. *See, e.g., Copeland v. Copeland*, 134 F.3d 362 (4th Cir.1998) (unpublished disposition); *Cerit v. Cerit*, 188 F.Supp.2d 1239 (D.Haw.2002); *cf. Grieve v. Tamerin*, 269 F.3d 149 (2d Cir.2001) (holding that *Younger* abstention was appropriate and that petitioner was "collaterally estopped" from litigating rights under the Hague Convention in federal court because he failed to raise his claim in a prior federal proceeding). In these cases, the left-behind parent chose the state court as the forum for his or her Hague Convention petition, not just for his other remedies under state law. In such cases, it is more reasonable to confine the left-behind parent to their choice and to be concerned about the forum-shopping implications of failing to do so. Here, affirming the district court stay would deprive Jeremiah of his choice of forum in which to bring his Hague petition. And requiring him to bring all of his claims in a single forum could effectively require him to choose between remedies, if for example jurisdiction or venue is improper under the Hague Convention in California, and jurisdiction under state custody law is improper in Washington.[5]

---

5. Jeremiah probably could not have brought his Hague Convention petition in California in the first instance because California probably does not have jurisdiction to hear it. ICARA provides:

> Any person seeking to initiate judicial proceedings under the Convention ... may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and

There are also at least two cases in which out-of-circuit district courts abstained pending state custody proceedings, even though the petitioner did not raise an ICARA claim in state court. *Bouvagnet v. Bouvagnet*, 2001 WL 1263497, at *4 n. 3 (N.D.Ill. Oct.22, 2001) (abstaining under *Younger* and stating that "[t]he relevant inquiry is wether the petitioner had the right to raise the ICARA claim in the state court; whether the petitioner did so is not relevant") (citing *Bowden v. Sigg*, No. 2:99–CV–908K, at 3–4 (C.D.Utah Dec. 22, 1999) (unpublished disposition)). These cases presume, however, that the state court custody judgment would act as a bar to the subsequent adjudication of a Hague Convention petition in federal court. For the reasons stated above, it would be inconsistent with our decision in *Mozes* and would severely limit the left-behind parent's choice of remedies in a way not contemplated by the Hague Convention to abstain in every case where a state custody proceeding had been filed and where an ICARA claim *could* have been raised.

### 2. OTHER *COLORADO RIVER* FACTORS

 Although it is "dispositive" that the state court judgment will not resolve all of the issues before the federal court, *Intel*, 12 F.3d at 913, we also conclude that other *Colorado River* factors weigh against a stay in this case. *Colorado River* and subsequent cases lay out the following factors, that, although not exclusive, are relevant to whether it is appropriate to stay proceedings:

(1) whether the state court first assumed jurisdiction over property;

(2) inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) whether federal law or state law provides the rule of decision on the merits;

(6) whether the state court proceedings are inadequate to protect the federal litigant's rights;

(7) whether exercising jurisdiction would promote forum shopping.

*See Moses H. Cone*, 460 U.S. at 15–16, 23, 26, 103 S.Ct. 927; *Travelers Indem.*, 914 F.2d at 1367–68; *see also Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. The factors relevant to a given case are subjected to a flexible balancing test, in which one factor may be accorded substantially more weight than another depending on

which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed. 42 U.S.C. 11603(b). At least one of our sister circuits has held that "located" has a particular meaning in the context of ICARA, distinct from "a traditional residency test." *Lops v. Lops*, 140 F.3d 927, 937 (11th Cir. 1998). The *Lops* definition, "the place where the abducted children are discovered," is more equivalent to the concept of physical presence. 140 F.3d at 937. This kind of common-sense definition makes sense in the context of the ICARA and the Hague Convention, concerned as they are with the Hague Convention's consistent application across borders. *See* 42 U.S.C. 11601(b)(1)(B); *cf. Mozes*, 239 F.3d at 1071.

Carla argues that § 11603(b) is merely a venue provision, and points to one out-of-circuit district court order in which the court, without analysis, refers to § 11603(b) as such. *Suki v. Kovacs (In re Suki)*, 1995 WL 631696, at *1 (E.D.Pa. Oct.27, 1995). But the Eleventh Circuit's determination in *Lops*, 140 F.3d at 936–38, that § 11603(b) referred to personal jurisdiction, is consistent with the multiple references in ICARA itself to the word jurisdiction in or in reference to § 11603(b), 42 U.S.C. §§ 11603(b) & 11604(a), (b). Even if § 11603(b) is a venue provision, it would still have prevented Jeremiah from filing a Hague Convention petition in California absent a waiver by Carla.

the circumstances of the case, and "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927; *accord Travelers Indem.,* 914 F.2d at 1368.

On balance, the factors counsel against staying proceedings. Factor (1) is not relevant here. *See Lops,* 140 F.3d at 943; *Cerit,* 188 F.Supp.2d at 1249. Factor (2) counsels against a stay because Carla and the children are currently located in Washington. *See Lops,* 140 F.3d at 943 (noting that a Georgia forum "was particularly convenient" because the children and one of the respondents lived in Georgia). Indeed, Carla initially contested jurisdiction in California because she preferred a Washington forum.[6] Factor (5) weighs against staying proceedings because federal law and a federal treaty provide the rule of decision. *Lops,* 140 F.3d at 943. *But see Cerit,* 188 F.Supp.2d at 1250 (holding that state law domestic relations issues predominated and thus that the federal source of law was of "diminished importance"). Factor (6) also weighs against a stay in this case, because, as discussed above, these state court proceedings will not reach the key issues that must be adjudicated to get relief under the Hague Convention. *See Intel,* 12 F.3d at 913 n. 4. Factor (7) also does not counsel for staying these particular proceedings because under 42 U.S.C. § 11603(b), as between the federal court in Washington and the state court in California, Jeremiah probably *had* to bring his Hague Convention claim in federal court. *See supra* note 6.

■ Although Factor (3) and Factor (4) appear to militate in favor of staying proceedings, we accord them less weight in the context of ICARA and the Hague Convention. Factor (3) and Factor (4) inquiries are motivated by order and efficiency concerns. In this context, however, these concerns should be subordinated to those motivating ICARA and the Hague Convention, particularly the requirement that courts expeditiously resolve claims. *See, e.g.,* Hague Convention, art. 2, art. 11, 19 I.L.M. at 1501, 1502; *see also Lops,* 140 F.3d at 943–44. The district court's decision to stay federal proceedings pending the appeal of a state court decision that did not address the requirements of the Hague Convention frustrates this purpose and delays any relief to which Jeremiah might be entitled under the Convention.

In addition, piecemeal litigation (Factor (3)) may be unavoidable in a typical ICARA situation. Indeed, the Hague Convention was promulgated to address situations in which there are multiple custody proceedings in multiple countries. And as discussed above, piecemeal litigation may be necessary in cases in which no one court has jurisdiction over both claims under state custody law and under the Hague Convention to ensure that a left-behind parent may pursue all of his remedies. Indeed, the Hague Convention specifically contemplates that, in a situation in which there are multiple proceedings, it is the state custody court that should issue a stay, not the court adjudicating the Hague Convention petition. *See* Hague Convention, art. 16, 19 I.L.M. at 1503.

■ Carla argues that the "doctrine of judicial estoppel" also favors abstention. *See generally Rissetto v. Plumbers & Ste-*

---

6. The only possible inconvenience of the federal forum is that it requires Carla to litigate in two courts. In the ICARA context, however, we do give significant weight to this type of inconvenience, because, as discussed above and in reference to Factor (3), piecemeal litigation, litigation in two courts is necessary in some cases to ensure that a left-behind parent may pursue both his remedies under state law and his remedies under the Hague Convention and ICARA.

*amfitters Local 343*, 94 F.3d 597, 600–05 (9th Cir.1996) (discussing the doctrine of judicial estoppel). She points to no case, however, in which a court has found it appropriate to stay proceedings or otherwise abstain because a party has taken inconsistent positions in an attempt to gain advantage in litigation. Furthermore, Jeremiah's position that California had jurisdiction over his custody claim is not necessarily inconsistent with his position that Washington, not California, has jurisdiction over his ICARA claim, because the concept of "home state" under California state law differs from the concept of "habitual residence" under ICARA. *Cf. Pegram v. Herdrich*, 530 U.S. 211, 228 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("Because fiduciary duty to disclose is not necessarily coextensive with fiduciary responsibility for the subject matter of the disclosure, [defendant] is not estopped from contesting its fiduciary status with respect to the allegations of the amended complaint."). Even Jeremiah's statement, "[California] is the only court that can decide all issues," is one that we believe is best understood as a statement regarding all issues raised *in the California case*.

## D. ALTERNATIVE ARGUMENTS FOR DISMISSAL

### 1. WAIVER

■ Although we have already rejected Carla's argument that issue preclusion dictates that we must conclude that Jeremiah, by filing for custody in California, waived his rights under the Hague Convention, she also argues that we can find waiver in the first instance under *Journe*. We decline to do so.

In *Journe*, the district court invoked its "equitable powers" and the doctrine of waiver to dismiss Dr. Journe's Hague Convention petition for return of his children to France. The court reasoned that, because "[h]is remedy under the Convention would put him in the same position he was in on November 17, 1994," Dr. Journe's request, on November 22, 1994, that the French court voluntarily dismiss his custody claim "can only be characterized as indicative of an intent to relinquish his rights to have the custody issues decided by the courts of France." 911 F.Supp. at 48.

This case is distinguishable. Jeremiah has not given up the very thing that relief under the Hague Convention would give him: "his choice of a [German] forum to decide the custody issues under [German] law, as contemplated by the Convention." *Id.* Many of the reasons that Jeremiah may have had for filing for custody in California are wholly consistent with a desire to have them finally adjudicated in Germany.

For example, Jeremiah may not have wanted Carla to gain an advantage even greater than the one that she may have sought to gain by removing the children from Germany. If we were to conclude that a left-behind parent may not simultaneously bring claims for both custody and return of the child under the Hague Convention, then the left-behind parent would have to wait until his Hague Convention proceeding was adjudicated before filing for custody. Under those circumstances, the abducting parent would always have an advantage in choosing the forum in which to litigate custody because they could always file first. Even if that custody proceeding was then stayed under the Hague Convention, the left-behind parent would nevertheless have to litigate the stay and any other matters in a (likely less convenient) forum of the abducting parent's choosing.

We do not conclude, therefore, that under these circumstances Jeremiah has ex-

hibited his "uncoerced intent to relinquish" his rights under the Hague Convention. *Id.* at 47. To do so would be to ignore the central purpose of the Hague Convention and ICARA—to prevent an abducting parent from gaining an advantage in custody litigation by manipulating the forum in which the suit is brought.[7]

The dissent contends that this result "gives the left behind parent a windfall by providing him with *two* opportunities to litigate custody: once in state court, and if he is unhappy with the result, all over again in another forum under the Hague Convention." Slip op. at 13338. The dissent ignores, however, the fact that the parent will only get two opportunities to litigate custody if a court properly determines under the Hague Convention that the children were wrongfully abducted from their country of habitual residence by the other parent. We disagree that the left-behind parent receives any windfall in this situation or that any injustice is done to the parent that wrongfully abducted her children.

### 2. FEDERAL QUESTION JURISDICTION

 In her brief to this court, Carla also incorporates by reference the Magistrate Judge's suggestion, on which his recommendations did not rely, that "it is questionable whether this court has jurisdiction for lack of a substantial question under the Hague Convention because

Jeremiah filed this action after he obtained a post-removal/retention custody decision regarding his children in a court of his choosing." We reject this reasoning to the extent that it is substantively similar to the waiver argument, and because it ignores the several provisions in ICARA and the Hague Convention that specifically contemplate that a left-behind parent may pursue remedies under both the Convention and state law. *See, e.g.,* 42 U.S.C. § 11603(h); Hague Convention, art. 18, 19 I.L.M. at 1503; Hague Convention, art. 29, 19 I.L.M. at 1504; Hague Convention, art. 34, 19 I.L.M. at 1504.

### E. ARGUMENTS REGARDING THE MERITS OF JEREMIAH'S PETITION

We do not reach any of the parties' arguments that bear on the merits of Jeremiah's petition, including those relating to the question whether Germany is the children's "habitual residence" under ICARA and those relating to the question whether Carla's removal of the children was wrongful. These should be resolved by the district court in the first instance.

### IV. CONCLUSION

For the reasons set forth above, we VACATE the district court's rulings staying this proceeding and abstaining from exercising jurisdiction and REMAND for further proceedings under the Hague Con-

---

7. This is not to say that a court, reviewing a Hague Convention Petition, could not consider as *one* of the circumstances that might indicate waiver the act of filing for custody in the jurisdiction to which a left-behind parent's children were removed. We hold that it is insufficient, however, to find an "uncoerced intent to relinquish" Hague Convention rights on this basis alone, because, as discussed above, filing for custody might simply indicate an intention to mitigate the litigation advantage that an abducting parent would obtain by wrongfully removing his or her children.

In our view, this is consistent with the position that the United States espoused in its amicus curiae brief to the California Court of Appeal—that remedies under the Hague Convention *may* be waived, and that parents *may* agree to litigate custody in a forum besides the children's habitual residence. Our decision is also consistent with the United States's position that "[w]hether or not Mr. Holder actually waived a right to seek a remedy under the Hague Convention should be decided in the first instance by the court considering his Hague Convention petition."

vention and ICARA. In light of our disposition of Jeremiah's appeal, we also VACATE the district court's denial of Carla's request for attorney's fees and costs on the grounds that it is premature.

VACATED and REMANDED.

Opinion by Judge PAEZ; Dissent by Judge THOMPSON.

DAVID R. THOMPSON, Circuit Judge, Dissenting.

I respectfully dissent. I do not agree with the majority's view that Jeremiah has not waived his Hague Convention remedy. Jeremiah initiated and litigated the child custody dispute in state court in California. After pressing that court to resolve the merits of the custody dispute, Jeremiah cannot now argue that the court should have refrained from doing so, simply because he disagrees with its decision.

A case involving analytically similar circumstances was before the United States District Court for the District of Puerto Rico in *Journe v. Journe*, 911 F.Supp. 43 (D.P.R.1995). There, Dr. Journe filed for divorce and custody in France. His wife, Ms. Soto, thereafter left France with the children. Ms. Soto later appeared at a hearing in the French court that was handling the divorce and custody proceedings. Shortly after the hearing, Dr. Journe requested dismissal of the divorce petition, believing that he and Ms. Soto had reconciled. The French court granted Dr. Journe's request and dismissed the divorce complaint. Ms. Soto, however, did not return to France and claimed that no reconciliation had occurred. Dr. Journe sought to exercise his rights under the Convention

in the federal district court in Puerto Rico and have the children returned to France. The district court held that Dr. Journe's voluntary dismissal of the divorce complaint constituted a waiver of his remedy under the Hague Convention. Dr. Journe had "his choice of a French forum to decide the custody issues under French law, as contemplated by the Convention. Given these circumstances, his voluntary dismissal of the action for divorce can only be characterized as indicative of an intent to relinquish his rights to have the custody issues decided by the courts of France." *Id.* at 48.

The same equitable principle applies in this case. Like Dr. Journe, Jeremiah gave up the very thing that relief under the Hague Convention would give him: resolution of the custody issue by a court in Germany. He did that by eschewing the Hague Convention and litigating his custody suit in state court. The majority argues that a left-behind parent should be able to "simultaneously" file a custody suit and a Hague Convention petition to ensure that the abducting parent cannot choose the forum in which to litigate custody. Maybe so. But that is not this case. Jeremiah did not "simultaneously" file both claims and ask the state court to stay the custody determination pending resolution of the Hague petition. Instead, he filed only the California custody suit, insisted that the California court decide the custody issue on the merits, objected to Carla's reference to the Hague Convention, and sought relief under that Convention only after the California state court issued its adverse custody determination.[1] Consequently, he has waived the Hague Convention claim he now asserts.

---

1. The first reference to the Hague Convention in the California state court proceedings occurred when, after having lost the custody dispute, Jeremiah filed a motion for reconsideration on August 18, 2000. On August 29, 2000 he filed with the United States Central

Authority an application for return of the children under the Hague Convention. He did not file the district court petition in this case until November 14, 2000. During the October 2, 2002 state court hearing on his motion for reconsideration, his counsel stated that he

This result is supported by the policy underlying the Hague Convention. The purpose of the Convention is to ensure that the abducting parent is not advantaged in the custody dispute. *See* Elisa Perez–Vera, Explanatory Report¶ 16, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 429 (1982).[2] The majority opinion, however, goes way beyond this. It gives the left-behind parent a windfall by providing him with *two* opportunities to litigate custody: once in state court, and if he is unhappy with the result, all over again in another forum under the Hague Convention. As the United States aptly has observed in its amicus brief filed in the state court of appeal, "[t]he Hague Convention was not intended to allow the 'left-behind parent' a second bite at the custody apple just because, after specifically electing to litigate custody in a forum that otherwise had jurisdiction, the parent suffered an adverse result."

This makes sense to me. I see no reason to give Jeremiah a second bite at the custody apple. He's had his day in court in the forum he chose. I would direct the district court to dismiss his Hague Convention petition, and I would not reach the other issues addressed by the majority.

was not raising the issue of the Hague Convention and objected to Carla's references to it. His counsel told the court:

> Finally, as regards [to Carla's] addressing of Hague issues or alleged Hague Convention issues in her reply points and authorities, there is a Hague action that we filed in federal court [the United States Central Authority filing] with another attorney, but in this action, the action at bar, [Jeremiah] has not raised this issue, and so I would object to [sic] relevancy to any law or facts that were recited by Counsel as regards to

Hague Convention issues, and I'd like to make that objection ongoing.

*Holder v. Holder (In re Marriage of Holder)*, 2002 WL 443397, at *4–5 (Cal.Ct.App. Mar.20, 2002).

2. Elisa Perez–Vera was the official Convention reporter, and her report is recognized by the Conference as the official history and commentary on the Convention. *See Gaudin v. Remis*, 282 F.3d 1178, 1182 n. 2 (9th Cir. 2002).