In re COUNTRYWIDE FINANCIAL
CORP. DERIVATIVE
LITIGATION.

In re Countrywide Financial Corp.
Securities Litigation.

Lead Case Nos. CV–07–06923–MRP
(MANx), CV–07–05295–MRP
(MANx).

United States District Court,
C.D. California.

March 28, 2008.

Blair A. Nicholas, David A. Thorpe, Matthew P. Siben, Niki L. Mendoza, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, Diane Zilka, Jay W. Eisenhofer, Michael James Barry, Grant and Eisenhofer PA, Wilmington, DE, Gerald H. Silk, Mark Lebovitch, Bernstein Litowitz Berger & Grossmann, New York, NY, for Plaintiffs.

Brian E. Pastuszenski, Stuart M. Glass, Goodwin Procter LLP, Boston, MA, Eric M. Roth, Graham W. Meli, Stephen R. Diprima, Wachtell Lipton Rosen and Katz,

New York, NY, Lloyd Winawer, Goodwin Procter, Eric S. Waxman, Skadden Arps Slate Meagher and Flom LLP, Los Angeles, CA, for Defendants.

## ORDER (1) GRANTING DEFENDANTS' CROSS MOTION STAY; (2) DENYING PLAINTIFFS' MOTION FOR CONSTRUCTIVE TRUST AND PRELIMINARY INJUNCTION; AND (3) DENYING PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

MARIANA R. PFAELZER, District Judge.

Before the Court are three motions brought with respect to *In re Countrywide Financial Corp. Derivative Litigation,* No. CV–07–06923–MRP ("*Arkansas Teachers* "), and one brought with respect to *In re Countrywide Financial Corp. Securities Litigation,* No. CV–07–05295–MRP ("*Pappas* "). The motions generally relate to the series of cases before this and other courts involving Countrywide Financial Corporation ("Countrywide"), Bank of America Corporation ("Bank of America"), and several current and former Countrywide directors and officers.

Defendants[1] in *Arkansas Teachers* bring a Cross–Motion to Stay merger-related class action claims in *Arkansas Teachers* in favor of similar proceedings currently progressing in the Delaware Court of Chancery. Defendants also bring a Motion to Stay Discovery in *In re Countrywide Fin. Corp. Shareholder Derivative Litigation,* No. BC375275 (Cal.Super.Ct.),

asking this Court to enjoin discovery in an action pending in Superior Court of California, Country of Los Angeles ("Los Angeles Superior Court"), that involves the same defendants. The latter motion was filed under the *Pappas* case number.

Plaintiffs[2] in *Arkansas Teachers* have filed two motions as well. They seek expedited discovery notwithstanding the stay provision in the Private Securities Litigation Reform Act ("PSLRA"). They also request equitable relief in the form of a constructive trust and preliminary injunction to preserve their standing to proceed in derivative fashion should Countrywide merge into Bank of America.

## I.

## BACKGROUND

Countrywide is a Delaware corporation headquartered in Calabasas, California. It operates in five business areas: Mortgage Banking, Banking, Capital Markets, Insurance, and Global Operations. The Mortgage Banking component originates and sells residential loans, and the Global Operations component provides ancillary services for those loans. The Banking component operates a federally chartered bank that invests in mortgages and home equity loans that originated in Mortgage Banking. The Capital Markets component underwrites and trades in mortgage-backed securities.

Countrywide's common stock, which is traded publicly, steadily climbed in value from about $20 in 2003 to $45 in February,

---

1. *Arkansas Teachers* names as Defendants Bank of America, Nominal Defendant Countrywide, Director Defendants Angelo R. Mozilo, David Sambol, Jeffrey M. Cunningham, Robert J. Donato, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell, Harley W. Snyder, Henry G. Cisneros, and Michael E. Dougherty, and Non–Director Defendants Stanford L. Kurland, Carlos M. Garcia, and Eric P. Sieracki.

2. The lead plaintiffs in *Arkansas Teachers* are Arkansas Teacher Retirement System ("ATRS"), Fire & Police Pension Association of Colorado ("FPPAC"), Public Employees Retirement System of Mississippi ("MS PERS") and Louisiana Municipal Police Employees Retirement System ("LAMPERS"), and Central Laborers Pension Fund (collectively, "Plaintiffs").

2007. *Arkansas Teachers* Compl. ¶ 2. However, the stock has since declined in value, trading at about $20 at the time of the first lawsuit in this Court in mid August, 2007, and at about $6 currently. Several parties have now filed lawsuits against Countrywide and current and former officers and directors, asserting violations of federal and state securities laws and breaches of fiduciary duties.

## A. Filings Prior to Merger Announcement

### 1. The Public Securities Class Actions

In one category of cases brought in this Court as early as August, 2007, and now consolidated under *Pappas*, No. CV–07–05295–MRP, plaintiffs bring class action claims against Countrywide and several present and former officers and directors of Countrywide on behalf of purchasers of the company's publicly traded securities. *See generally* Order Consolidating Cases and Appointing Lead Plaintiff and Lead Counsel, No. CV–07–05295–MRP, Nov. 28, 2007. Several of the *Pappas* cases allege that Countrywide issued false and misleading statements from 2004 to August 2007, in violation of § 10(b) and § 20(a) of the Securities and Exchange Act of 1934 ("1934 Act") and Securities and Exchange Commission ("SEC") Rule 10b–5.[3] These "fraud on the market" allegations reference Countrywide press releases, conference calls with investors where executives answered questions, SEC filings such as quarterly and annual reports, and presentations to investors—dating back to 2004—as examples of misleading statements and misrepresentations.[4] Others of the cases consolidated under *Pappas* bring class action suits on behalf of purchasers of "preferred" securities traceable to a single offering—i.e. the November 1, 2006 offering of "7% Capital Securities of Countrywide Capital V."[5] These complaints allege that Defendants failed to craft a registration statement and prospectus (collectively "Prospectus") for the securities offering that fully informed investors of "all material facts and industry trends." The cases are brought under and allege violations of §§ 11, 12, and 15 of the Securities Act of 1933 ("1933 Act").[6] Pursuant to the 1933 Act, some of the cases name Citigroup

---

**3.** *George Pappas v. Countrywide Financial Corp., et al.*, No. CV–07–05295–MRP; *Norfolk County Retirement System, et al. v. Countrywide Financial Corp., et al.*, No. CV–07–05727–MRP; *Saratoga Advantage Trust, et al. v. Countrywide Financial Corp., et al.*, No. CV–07–06635–MRP; *New York City Employees' Retirement System, et al. v. Countrywide Financial Corp., et al.*, No. CV–07–00492–MRP.

**4.** *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide, et al.*, No. CV–07–07097–MRP, is also before this Court and also a class action alleging violations of the 1934 Act and SEC Rule 10b–5. *Argent* is brought on behalf of "qualified institutional buyers who purchased Countrywide Series A and Series B Floating Rate Convertible Senior Debentures due 2037 ("debentures") in a private placement pursuant to SEC Rule 144A." The Court exercised its discretion "to separate the *Argent* case under a distinct lead plaintiff be-

cause, as [had] become evident in the briefs and at oral argument, there are important and complex legal and factual issues which are unique to the private placement scenario, and there is reason to believe these issues could be lost in the fray of the public securities litigation." Order Consolidating Cases and Appointing Lead Plaintiff and Lead Counsel, No. CV–07–05295–MRP, Nov. 28, 2007, at 12.

**5.** *Jack McBride, et al. v. Countrywide Financial Corp., et al.*, No. CV–07–06083–MRP; *Barry Brahn v. Countrywide Financial Corp., et al.*, No. CV–07–07259–MRP; *Marsha Steele v. Countrywide Financial Corp., et al.*, No. CV–07–07548–MRP.

**6.** *David H. Luther v. Countrywide Home Loans Servicing, LP, et al.*, No. CV–07–08165–MRP, was briefly before this Court. Luther alleges violations of the 1933 Act in the issuance of

Global Markets, J.P. Morgan Securities, Merrill Lynch, Morgan Stanley, UBS Securities LLC, Wachovia Capital Markets LLC (collectively the "underwriters") as defendants. On Nov. 28, 2007, this Court appointed "New York Funds"[7] as Lead Plaintiff for the group of securities cases consolidated under *Pappas*. Order Consolidating Cases and Appointing Lead Plaintiff and Lead Counsel, No. CV–07–05295–MRP, Nov. 28, 2007.

### 2. Los Angeles Superior Court Derivative Cases

A second series of cases, including *Garber I*[8] and *New Jersey Carpenters' Pension Fund*,[9] were brought in derivative form in Los Angeles Superior Court. These cases, which have since been consolidated in the state court under the title *In re Countrywide Financial Corporation Shareholder Derivative Litigation*, No. BC375275 (Cal.Super.Ct.), (hereafter "*Garber*"), name as defendants several individuals and nominal defendant Countrywide Financial Corporation ("Countrywide"), and allege that the individual defendants breached their fiduciary duties to shareholders in the operation of the company. For example, the *Garber I* complaint alleges that defendants breached their fiduciary duties by (i) causing Countrywide to engage in unsound lending practices, leading to substantial earn-

ings problems and dramatically insufficient loan loss reserves; (ii) causing Countrywide to disseminate materially false and misleading statements during the relevant period, in order to artificially inflate the value of Countrywide securities, which has exposed the company to liability in federal securities actions; and (iii) unlawfully engaged in massive insider-selling, so as to unlawfully enrich themselves while in possession of material, adverse non-public information. Def. Bank of America's Notice of Removal, Jan. 22, 2008, Exh. 1 ¶¶ 3–5. Defendants removed these cases to federal court on Aug. 31, 2007, but Judge Walter of this Court granted plaintiffs' motion to remand because the defendants had not established the presence of subject matter jurisdiction. *See* Nov. 15, 2007 Order Granting In Part and Denying In Part Plaintiff's Motion to Remand Action, Case No. CV–07–5728–JFW (SSx); Order Granting In Part and Denying In Part Plaintiff's Motion to Remand Action, Case No. CV–07–7118–JFW (SSx).

### 3. ERISA Cases

During the same time period, a third series of cases were brought in this Court against Countrywide and several individual defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.[10]

---

certain "Mortgage Pass–Through Certificates" and brought a class action on behalf of purchasers of those certificates. The case was originally brought in Los Angeles Superior Court, but removed to this Court by Defendants. The Court determined, however, that remand to the state court was mandated by the 1933 Act's flat prohibition on removal of cases originally brought in state court. *See* Order Granting Plaintiff's Motion For Remand to State Court and Denying an Award of Attorney's Fees and Expenses, No. CV–07–08165–MRP, Feb. 28, 2008.

**7.** "New York Funds" refers to Thomas P. DiNapoli, Comptroller of the State of New

York, as Administrative Head of the New York State and Local Retirement Systems, and as Trustee of the New York State Common Retirement Fund, and of the New York City Pension Funds.

**8.** As initially removed to this court, *Garber I* refers to *Robert L. Garber v. Angelo R. Mozilo et al.*, No. CV–07–05728–JFW.

**9.** *New Jersey Carpenters' Pension Fund v. Angelo R. Mozilo et al.*, No. CV–07–07118–JFW.

**10.** *See, e.g., Vincent Alvidres, et al. v. Countrywide Financial Corp., et al.*, No. CV–07–05810–RGK.

These "ERISA cases" are currently proceeding before Judge Klausner. The cases raise allegations that "Defendants breached various fiduciary duties owed to Plan participants under ERISA by imprudently allowing the investment of the Plan's assets in Countrywide stock ... [and] such investment was unduly risky given the company's involvement in marketing and extending subprime mortgage loans on a 'low documentation' basis." Mar. 18, 2008 Minutes of Defendant Countrywide Financial Corp.'s Motion to Dismiss, *Alvidres v. Countrywide Financial Corp., et al.,* No. CV–07–05810–RGK, at 1, 2008 WL 819330.

### 4. Federal Court Derivative Cases

Finally, in October 2007, a fourth series of cases, now consolidated under *Arkansas Teachers,* No. CV–07–06923, were brought in this federal court derivatively, alleging that Countrywide directors engaged in an extensive pattern of misconduct in disregard of their fiduciary duties to the corporation, including a lack of good faith, due care, and oversight of Countrywide's lending practices, financial reporting, and internal control.[11] The breach of fiduciary duty claims, brought under principles of corporate law, are supplemented with claims that allege violations of the §§ 10(b), 14(A) and 20A of the 1934 Act and SEC Rule 10b–5 and 14A–9. The allegations arising under federal securities laws contend that Countrywide, as an entity, suffered harm because during the relevant period, Countrywide "repurchased"

billions of dollars of its own securities from the open market.

### B. The January 11, 2008 Merger Announcement

On January 11, 2008, Bank of America and Countrywide announced a proposed transaction whereby Countrywide would merge with Red Oak Merger Corporation, a subsidiary of Bank of America. Pursuant to the proposed merger agreement, Countrywide shareholders would receive 0.1822 shares of Bank of America stock for each Countrywide share, in an "all stock" transaction. This proposal values Countrywide stock at about $7.16 per share. Section 6.7 of the "Agreement and Plan of Merger" is a lengthy provision providing for Countrywide Director and Officer indemnification from legal liability following the merger. The parties dispute the consequences of that provision with respect to the suits at issue here.

While the precise timing of a shareholder vote on the proposal and consummation of the merger is currently uncertain, it appears that the transaction is forecasted to close in the third quarter of 2008. In any case, the January 11 announcement of the transaction resulted in significant changes in the litigation landscape.

### C. Developments Following the Merger Announcement

#### 1. Filings in Los Angeles Superior Court

Immediately following the announcement, three new class action cases, *Adams,*[12] *Snyder,*[13] and *Feder,*[14] brought

---

11. *Arkansas Teacher Retirement System, et al. v. Countrywide Financial Corp., et al.,* No. CV–07–06923–MRP; *Jason Miller v. Angelo R. Mozilo, et al.,* No. CV–07–06444–MRP; *Public Employees' Retirement System of Mississippi v. Angelo R. Mozilo, et al.,* No. CV–07–07058–MRP.

12. As initially removed to this court, *Adams* refers to *Jeff Adams, et al. v. Angelo Mozilo, et al.,* No. CV–08–00236–MRP.

13. *Andre Snyder v. Countrywide Financial Corp., et al.,* No. CV–08–00285–MRP.

14. *Michael Feder v. Jeffrey M. Cunningham, et al.,* No. CV–08–00287–MRP.

on behalf of Countrywide securities holders and against several Countrywide directors and Bank of America, were filed in Los Angeles Superior Court seeking equitable relief—i.e. enjoining the merger and holding the merger agreement unenforceable. These class action complaints generally allege that Countrywide directors abdicated their fiduciary duties of loyalty, due care, candor, good faith and fair dealing by agreeing to sell Countrywide for "grossly inadequate" and "egregiously low" consideration. The complaints also contend that defendants acted for their own personal benefit in reaching this agreement.

Bank of America almost immediately removed these cases to this federal court. After consideration of plaintiff's Motion to Remand, this Court remanded *Snyder* for lack of subject matter jurisdiction on March 12, 2008. *See* Order Granting Plaintiff's Motion to Remand to State Court, No. CV–08–00285–MRP. *Feder* and *Adams* remain before this Court.

### 2. Filings in the Delaware Court of Chancery

Several class action suits were also filed in the Delaware Court of Chancery immediately following the merger announcement.[15] The Delaware court has consolidated these cases under title *In Re: Countrywide Corporation Shareholders Litigation* ("*Freedman*") and appointed lead plaintiffs and counsel. The consolidated complaint, brought on behalf of all public shareholders of Countrywide, alleges that individual defendants breached their fiduciary duties of loyalty, good faith, due care, and candor by entering into the merger agreement with Bank of America. Consolidated Verified Class Action Complaint (hereafter, "Del. Compl."), C.A. No.

3464–VCN, Decl. of Lloyd Winawer In Supp. of Countrywide Defs.' Cross–Motion to Stay, at Exh. 4. The *Freedman* plaintiffs have also brought claims against Bank of America for aiding and abetting the breaches of fiduciary duties, and seek equitable relief, including an injunction on the shareholder vote pending a proper valuation process and complete disclosure as well as a declaration that the merger agreement is unenforceable. The parties have commenced expedited discovery and scheduled a hearing for Plaintiffs' Motion for a Preliminary Injunction.

### 3. Amendments to *Arkansas Teachers* and *Garber*

Another consequence of the January 11 merger announcement was that the derivative plaintiffs—namely the plaintiffs in *Arkansas Teachers* in this Court and *Garber* in Los Angeles Superior Court—amended their complaints to *add* class action claims generally alleging that Countrywide directors breached their fiduciary duties by entering into the agreement, and also alleging that Bank of America aided and abetted the directors' breach. The complaints pray for equitable relief, including, for example, an injunction of the proposed transaction "until such time that the derivative claims pending in this action are fully and finally resolved" (*Arkansas Teachers*) and "unless and until [Countrywide] adopts and implements a procedure or process to obtain a merger agreement providing the highest possible terms for shareholders," (*Garber*).

Because the amendment to the *Garber* complaint potentially raised a new basis for federal jurisdiction, Bank of America removed the case once again to federal court. However, on February 21, 2008, this Court remanded *Garber* to Los Ange-

---

**15.** *Robert Freedman v. Countrywide Financial Corp., et al.,* Del. Ch., C.A. No. 3464–VCN; *Anthony Caiafa v. Angelo R. Mozilo, et al.,* Del. Ch., C.A. No. 3469–VCN; *Ming Fang Li v. Mozilo, et al.,* Del. Ch., C.A. No. 3506–VCN.

les Superior Court for lack of subject matter jurisdiction. *See* Order Granting Plaintiffs' Motion to Remand, No. 08–CV–00392–MRP. The case is now proceeding before Judge Victoria Chaney in Los Angeles Superior Court.

*Arkansas Teachers* remains here, and is the subject of three of the motions before the Court now. The 200–page consolidated complaint in *Arkansas Teachers* contains both derivative and class action claims: Counts I–V of the consolidated complaint assert derivative claims against individual defendants for breaches of fiduciary duties, gross mismanagement, waste of corporate assets, and insider trading under California Corporation Code § 25402. Counts VI–IX assert derivative claims against individual defendants for violations of federal securities laws—in particular, §§ 10(b), 14(a), and 20A of the 1934 Act and SEC Rule 10b–5 and 14a–9. Finally, Counts X–XIII assert class action claims on behalf of "all current holders of Countrywide's common stock." These "merger-related class action claims"[16] allege the Countrywide directors breached their fiduciary duties in connection with the proposed transaction with Bank of America, and Bank of America aided and abetted those breaches. Plaintiffs seek a constructive trust and an injunction against the impending shareholder vote and transaction.

## II.

### DISCUSSION

Against that background of litigation proceeding in various courts, the Court evaluates the motions at issue here.

---

**16.** The terms "merger-related class action claims" and "merger-related claims" are used throughout this order to refer to Counts X–XIII in the *Arkansas Teachers* Complaint. Count XIII, entitled "Claim Against The Individual Defendants And BofA For Constructive Trust And An Injunction," is styled similar to

### A. Defendants' Cross–Motion to Stay Merger Claims

■ Defendants urge the Court to stay *Arkansas Teachers'* Plaintiffs' recently added merger-related claims in favor of the litigation pending in the Delaware Court of Chancery. In brief, Defendants argue that *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), authorizes this Court to stay the claims at issue in favor of the state court litigation, and, on consideration of the relevant factors, directs the Court to grant such a stay. Plaintiffs respond that (1) under *Colorado River* and its progeny, this Court cannot "partially" stay this case by staying only the class action claims while adjudicating the derivative ones; and (2) regardless, the Court should find that analysis of the *Colorado River* factors mandates the exercise of jurisdiction over the class action claims.

### 1. Legal Standard

■ Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of concurrent and parallel state proceedings where doing so would serve the interests of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). A stay is proper only in "extraordinary circumstances,"

---

a "prayer for relief" that seeks equitable remedies to "protect the derivative claims." Because the Claim appears to be brought on behalf of the class, and not the corporation, and alleges harm caused by the merger, the Court groups it with Counts X–XII.

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), but is preferable to dismissal because it "ensures that the federal forum will remain open if, for some unexpected reason, the state forum proves to be inadequate," *Daugherty v. Oppenheimer & Co., Inc.,* No. C 06–7725 PJH, 2007 WL 1994187, at *3 (N.D.Cal. Jul. 5, 2007).

 "*Colorado River* and subsequent cases lay out the following factors, that, although not exclusive, are relevant to whether it is appropriate to stay proceedings: (1) whether the state court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping." *Holder v. Holder,* 305 F.3d 854, 868 (9th Cir.2002). The balancing of these factors is to be "heavily weighted in favor of exercising jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927.

### 2. Analysis

#### a. The Federal and State Class Action Merger Claims Are Substantially Similar.

 As a threshold matter to the *Colorado River* test, the Court must determine whether the federal and state actions are sufficiently "parallel"—i.e. whether "substantially the same parties are contemporaneously litigating the same issues in different forums." *In re Comverse Technology, Inc. Derivative Litigation,* No. 06 CV–1849, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006). The Court finds that the merger-related class action claims proceeding in Delaware Chancery Court

and in *Arkansas Teachers* here meet this requirement for the following reasons: First, as here, the Delaware action names as defendants the current Countrywide directors for breaches of fiduciary duties, and Bank of America for aiding and abetting those breaches. Second, both putative classes are identically composed of Countrywide common-stock holders. Though the named plaintiffs are different, "where ... congruence of both interests and allegations exists in duplicative class actions, the nonidentity of the named class representatives should in no way undermine a court's determination that the suits in question are otherwise parallel." *Romine v. Compuserve Corp.,* 160 F.3d 337, 340 (6th Cir.1998). Third, the claims raise very similar sets of substantive issues. Both complaints allege that Countrywide directors breached an exhaustive list of fiduciary duties by entering into a merger agreement which allegedly does not adequately value the common stock, in part because it does not adequately value the derivative lawsuits. Both involve allegations that the directors' approval was motivated in part by a personal interest to escape legal liability arising from the derivative actions. They similarly allege that Bank of America aided the directors' abdication of their duties by presenting them with an undervalued deal proposal that provided significant individual benefits to the directors, including provisions for indemnification from legal liability. Finally, both seek equitable relief. In sum, the "parallelism" requirement for a *Colorado River* stay is easily met due to the striking similarity of the class action claims in *Arkansas Teachers* and *Freedman.*

#### b. A Partial Stay Is Permissible under *Colorado River.*

 Only a *partial* stay would be appropriate in this instance because, while the *class action* claims are sufficiently parallel,

the Delaware case does not contain the derivative claims present in this case. In other words, the Court could stay only the class action claims—precisely the parallel claims proceeding in Delaware—and would proceed here with the derivative claims, which allege violations of federal securities laws under the 1934 Act as well as breaches of fiduciary duties and California state laws. The parties vigorously dispute whether this partial abstention is permissible under *Colorado River.*

Plaintiffs argue that two bright-line rules in the *Colorado River* jurisprudence bar a partial stay as to the class action claims here. First, they contend that a stay on any single claim is impermissible where the state court case cannot "end the litigation" between the parties in its entirety. Pls.' Opp. To Defs.' Cross–Mot. Stay, at 15. Under that rule, a stay on the class action claims is improper because it is without question that the Delaware case cannot and will not address the Plaintiffs' derivative claims. Second, Plaintiffs argue a stay on any claim is impermissible where some part the case is subject to exclusive federal jurisdiction. Pls.' Opp. To Defs' Cross–Mot. Stay, at 16. Applying that formulation, a stay on the class action claims is impermissible because some of the derivative claims are subject to exclusive federal jurisdiction under the 1934 Act.[17] Defendants refute Plaintiffs' bright line rules and essentially argue that *Colorado River* authorizes a court to decline to exercise jurisdiction over one or all of the

claims in a case. The only question, according to Defendants, is whether "the state court can fully and finally decide the claims that the federal court has stayed." Defs.' Repl. In Further Supp. Of Mot. Stay, at 20.

The Court agrees with Defendants' view of a partial stay under *Colorado River.* Plaintiffs' arguments are unavailing because they find support only in excerpting from cases out of context. For instance, in support of the first argument, Plaintiffs quote cases where a court does not permit a *Colorado River* stay or dismissal on an issue where that issue itself cannot be resolved in state court. *See, e.g., Intel Corp. v. Advanced Micro Devices,* 12 F.3d 908, 913 (9th. Cir.1993) (finding a stay on federal copyright claims improper where resolution of the state court issues may not have collateral estoppel effect); *Holder,* 305 F.3d at 868 (explaining that a stay on federal Hague Convention claims was improper because those claims would not be decided or resolved by the state court).[18] These cases say nothing about the staying of a claim that can be fully resolved in state court. Here, this Court will only stay the state law merger-related class action claims that are proceeding in nearly identical form in Delaware, under the same laws. The derivative claims will proceed in this Court.

Indeed, the district court in *Daugherty* similarly concluded that *Colorado River* permits a partial stay. 2007 WL 1994187, at *5. In that case, the district court

---

**17.** Plaintiffs also argue that Defendants' position here is inconsistent with a motion filed in the federal district court in the District of Delaware, where Defendants sought to transfer a shareholder derivative suit to this Court. However, that position appears consistent with Defendants' proposal to litigate the *derivative* claims, based in part on federal law, in this court, and the *class action* merger claims, based on Delaware state law, in the Delaware Court of Chancery.

**18.** Plaintiffs also cite *Comverse,* 2006 WL 3193709, at *2, because the court declined to stay in favor of a state court action where the federal action had securities fraud claims subject to exclusive federal jurisdiction. The *Comverse* court, however, appears not to be considering a partial stay. Rather, it was troubled with the idea of abstaining from hearing claims that "cannot be adjudicated in state court." *Id.* at *7.

stayed proceedings on a subset of a plaintiff's claims because that subset was substantially similar to a case proceeding in state court, but continued adjudication of claims that would not be resolved in state court. *Id.* As here, the court concluded that "neither *Holder* nor *Intel* supports plaintiff's argument that the *Colorado River* doctrine may not be used to dismiss or stay *part* of an action," because those cases addressed the staying of claims unrelated to the state court action. *Id.* at *6 (emphasis added).

■ Plaintiffs' other argument, that in the Ninth Circuit it is never appropriate to stay a claim in a case where another claim in that case has exclusive federal jurisdiction, is similarly an overbroad reading of the case law. The relevant Ninth Circuit case law does not establish such a rule. Ninth Circuit law prohibits the exercise of *Colorado River* "to stay proceedings *as to claims* within *exclusive* federal jurisdiction," *Minucci v. Agrama,* 868 F.2d 1113, 1115 (9th Cir.1989) (emphasis added). Thus, it is not appropriate to stay a claim subject to exclusive federal jurisdiction as that claim cannot be resolved, as framed, in state court. *Id.* (reversing district court's *Colorado River* stay of a federal copyright claim because copyright claims cannot be heard in state court); *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 821 (9th Cir.1982) (finding abuse of discretion where district court dismissed federal antitrust claims under *Colorado River*); *Silberkleit v. Kantrowitz,* 713 F.2d 433 (9th Cir.1983) (holding that the district court could not stay ERISA and 1934 Act claims under *Colorado River*). Here, the Court will not stay any claim that has exclusive federal jurisdiction (or any claim based on federal law), and rather, if the *Colorado River* balancing test mandates, will stay claims based on state law, and subject to concurrent jurisdiction. Claims subject to concurrent jurisdiction are precisely the type contemplated by

*Colorado River. Turf Paradise,* 670 F.2d at 821 (stating that *Colorado River* "is invoked when both the federal and state courts have concurrent jurisdiction over *particular claims*") (emphasis added). *See also Minucci,* 868 F.2d at 1115 (The "*Colorado River* doctrine ... applies to claims under the concurrent jurisdiction of the federal and state courts".)

In sum, *Colorado River* and its progeny authorize this Court to stay only the class action claims in this case in favor of the Delaware Court of Chancery, even though other claims cannot be so stayed. The Court continues by balancing the *Colorado River* factors.

### c. The Interests of Judicial Administration Decisively Favor Staying the Parallel Claims.

■ The parties dispute virtually every factor in the *Colorado River* balancing test. Recognizing that the test is "flexible ... in which one factor may be accorded substantially more weight than another depending on the circumstances of the case," *Holder,* 305 F.3d at 870–71 (citing *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927), the Court finds that several aspects of these cases decisively favor a stay of the class action claims. First, granting the stay would avoid the duplication of efforts and the risk of inconsistent results that could result from piecemeal litigation. Indeed, this and the other courts involved have observed the need to proceed expeditiously in this matter, and multiple courts proceeding apace on these substantially similar claims is a considerable waste of judicial resources in light of the significant complexity of this litigation. Proceeding in parallel also creates the risk of conflicting results in enjoining a multibillion dollar merger that impacts both innumerable shareholders and the entire mortgage industry. As in *Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.,* 123

F.Supp.2d 514, 519 (D.S.D.2000), which also involved a *Colorado River* stay on parallel merger-related claims, "the risks associated with conflicting adjudications are particularly high" making it vital that "the issues raised in this action and in Delaware be resolved quickly, clearly, and uniformly." The interests of "wise judicial administration" make this a prime scenario for a *Colorado River* stay. *See, e.g., id.* (staying claims for breaches of fiduciary duties in connection with an impending merger in favor of parallel litigation in Delaware Court of Chancery); *Int'l Jensen Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273, at *6 (N.D.Ill. Aug. 27, 1996) (staying claims that sought to enjoin an impending merger where parallel claims were proceeding in state court).

Lending further support to a stay in favor of the Delaware Court of Chancery, the class action merger-related claims allege breaches of fiduciary duties, which are subject to Delaware law because Delaware is the state of Countrywide's incorporation. *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.1985) ("Claims involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation.")[19] Thus, the Delaware Court of Chancery, which unquestionably "has a well-recognized expertise in the field of state corporation law," *Strougo v. BEA Associates*, No. 98 Civ. 3725, 2000 WL 45714, at *5, U.S. Dist. LEXIS 346, at *13 (S.D.N.Y. Jan. 19, 2000), is a particularly suitable forum to adjudicate those disputes. *See also Iron Workers of W. Pa. Pension Plan v. Caremark RX, Inc.*, Civ.

A. No. 3:06–1097, 2007 WL 60927, at *6 (M.D.Tenn. Jan. 5, 2007) ("The Delaware Court of Chancery is a more than adequate forum for the parties to litigate their Delaware cause of action.") In addition, the Delaware court obtained jurisdiction over the class action merger-related claims immediately after the merger (about one month before the Complaint was amended to include those claims here), and more importantly, is further along in adjudication than this Court. There, the parties have stipulated to expedited discovery and scheduled a hearing on a preliminary injunction for May 20.

Plaintiffs respond with arguments that cannot overcome these considerations, despite the disfavor against staying claims under *Colorado River*. Forum-shopping hardly plays any factor in this scenario, as there are interests in both Delaware, where Countrywide is incorporated and whose laws control the class action part of the litigation, and California, where Countrywide is headquartered and many of the parties reside. Neither court has "assumed jurisdiction over property" to date, and even should this Court grant Plaintiffs' Motion for Constructive Trust and Preliminary Injunction, that decision would be in the context of the derivative claims, and not the class action claims subject to stay. As has been reiterated several times in this Order, the derivative claims will not be stayed nor suffer any prejudice from a stay on the class action claims. Finally, the Court is not persuaded that the class representatives in Dela-

---

19. Plaintiffs argue that the merger-related claims will necessarily involve "valuation" of the derivative claims, implicating both federal and California law. Defendants respond that a court need only decide "whether the proposed merger's alleged effect on those claims ... interfered with the Countrywide directors' duty of loyalty to Countrywide's sharehold-

ers." Defs.' Repl. In Further Supp. Of Mot. Stay, at 21. Regardless of whose characterization of the case is accurate, the claims at issue, which focus on breaches of fiduciary duties, arise under Delaware law. That is sufficient to persuade the Court that the Delaware Court of Chancery is a desirable forum for their adjudication.

ware are incapable of adequately representing the class, as Plaintiffs suggest.

On balance, the realities of these cases present the requisite "exceptional circumstances" to merit a *Colorado River* stay in favor of the Delaware Chancery Court action. The Court agrees with Defendants that a stay would "divide the litigation neatly and without overlap" because this Court would address pre-merger derivative claims, which stem in part from federal law, while the Delaware Chancery Court would address the merger-related class claims, which arise under Delaware law. Accordingly, the Court grants Defendants' Cross Motion to Stay with respect to the merger-related class action claims.

### B. Defendants' Motion to Stay Discovery in *Garber* (Cal.Super.Ct.)

The Court declines to decide Defendants' Motion to Stay Discovery in *Garber* because the request appears to have been rendered moot by a stay already granted by the Los Angeles Superior Court. *See* Defs.' Notice of Filing of Notice of Proceedings in Connection with Defs.' Motion to Stay Discovery, Exh. A, at 1 (stating that the Los Angeles Superior Court's "tentative decision was to grant Defendants' Motion to Stay the Derivative and Class Action for reasons of judicial economy and to avoid the potential for inconsistent rulings").

### C. Plaintiffs' Motion for Constructive Trust and Preliminary Injunction

■ Plaintiffs seek preliminary equitable relief—namely, a constructive trust and preliminary injunction—"merely" to "preserve the status quo and this Court's ability to adjudicate the derivative claims brought by Plaintiffs on behalf of Countrywide." Pls.' Repl. In Supp. Mot. Constr. Trust And Prelim. Inj., at 1. Plaintiffs pray for one of several alternatives. They request that the Court enjoin "Defendants

from circumventing an adjudication of the merits of the derivative claims" and, if the merger is allowed to go forward, "recognize that the derivative claims are held in a constructive trust or require that the claims be assigned to Countrywide shareholders." Pls.' Mem. In Supp. Mot. Constr. Trust And Prelim. Inj., at 7. "At a minimum," Plaintiffs urge the Court to recognize Defendants hold "wrongfully-obtained funds in a constructive trust for the benefit of Countrywide shareholders." *Id.* These requests stem from Plaintiffs' concern that standing to bring derivative claims on behalf of Countrywide may be extinguished upon Bank of America's acquisition of Countrywide. To maintain the "status quo," according to Plaintiffs, would be to preserve derivative standing notwithstanding the transaction and subsequent extinction of Countrywide shares.

Defendants respond that Plaintiffs' requests are drastic and seek emergency relief that is virtually "unprecedented," particularly because Plaintiffs have not shown any wrongdoing with any degree of specificity. Defs.' Opp. To Pls.' Mot. Constr. Trust And Prelim. Inj., at 3. Defendants contend that Plaintiffs have not shown a likelihood of success on the merits or irreparable harm to warrant preliminary equitable relief. They further argue that Plaintiffs' view here presents a "fundamental misconception" regarding the nature of a derivative claim. *Id.* at 14.

### 1. Legal Standard

■ Preliminary equitable remedies are properly utilized to maintain the status quo and prevent the "irreparable loss of rights before judgment." *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir.1984). The Ninth Circuit provides multiple formulations of the test governing the appropriateness of preliminary injunctive relief.

Plaintiffs must demonstrate "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [Plaintiffs'] favor." *Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir.2007) (citations omitted). Under an alternate formulation, they must establish four requirements: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.*

### 2. Analysis

#### a. Plaintiffs' Requested Relief Does Not Appropriately Maintain the "Status Quo"

 Simply put, the Court is not persuaded that equitable preservation of Plaintiffs' derivative standing throughout the merger process would appropriately maintain the "status quo"—a proposition that is repeated innumerable times in Plaintiffs' briefs but finds little support in their cited case law or common sense. It is fundamental that a plaintiff's derivative suit "is regarded as a property right belonging to the corporation instead of the shareholder." *Alabama By–Products Corp. v. Cede & Co.*, 657 A.2d 254, 265 (Del.1995). If the law extinguishes derivative standing for a corporation no longer in existence and "the derivative claim vests in the ... surviving corporation ... upon the transfer of stock through the merger," *Id.* at 264,[20] then the derivative suit is proper-

ly viewed as a part of the bargain, or an "asset" that the acquiring company obtains in exchange for consideration. Thus, along with any other assets contemplated by the acquisition, Bank of America will effectively acquire the derivative suits from Countrywide. Defendants have argued, and this Court agrees, that *interference* with the operation of law to excise the derivative suits from the bundle of assets to be transferred to Bank of America under the acquisition agreement is a far greater disturbance of the "status quo" than any extinction of Plaintiffs' standing to proceed derivatively. *See Grosset v. Wenaas*, 42 Cal.4th 1100, 72 Cal.Rptr.3d, 129, 136, 175 P.3d 1184 (Cal.2008) (discussing the standing requirement and concluding that "allowing a plaintiff to retain standing despite the loss of stock ownership would produce the anomalous result that a plaintiff with absolutely no 'dog in the hunt' is permitted to pursue a right of action that belongs solely to the corporation.") (citations omitted).[21]

Plaintiffs have not presented anything to the Court that suggests otherwise with respect to the preliminary relief they seek. They rely primarily on a single authority, *In re Caremark Rx Inc. Stock Option Litigation*, Slip Op. No. 06C–1329 (Tenn. 1st Cir.Ct., Dist. 20, Mar. 26, 2007), in support of their equitable requests. In relevant part, *Caremark* involved a class action brought in state court on behalf of shareholders against directors who allegedly backdated stock options. *See* Order Granting A Restraining Order And Delcaring [sic] The Imposition of a Constructive Truse [sic] ("*Caremark*"), Nicholas Decl.

---

**20.** *See also Lewis v. Ward*, 852 A.2d 896, 900–901 (Del.2004) ("Under Delaware law, it is well established that a merger which eliminates a derivative plaintiff's ownership of shares of the corporation for whose benefit she has sued terminates her standing to pursue those derivative claims.").

**21.** It must be noted that there are limited exceptions to the general rule that this type of merger eliminates standing to pursue derivative claims. *See Lewis*, 852 A.2d at 899. The Court expresses no opinion on the applicability of these exceptions; it addresses the general rule because the rule forms the basis of Plaintiffs' request for relief.

In Supp. Mot. Constr. Trust And Prelim. Inj. ("Nicholas Decl."), Exh. C. ¶ 3. Plaintiffs argued that without equitable relief to prevent a *settlement agreement in a different class action case* they would have no adequate remedy to recover their interest. Pls.' Mem. In Supp. Mot. For Restraining Order and For Decl. Judgment, Nicholas Decl., Exh. D, at 2–3. The court agreed, concluding that that remedy would be "forever lost" by Defendant's actions, and a restraining order was necessary to prevent that loss. *Caremark* ¶ 9. Thus, the court exercised its equitable power to "restrain Defendants in this action from ... attempting to evade or impede [the] Court's ability to adjudicate the merits of Plaintiffs' option backdating claims." *Id.* ¶ 5. The court ordered that "the parties ... maintain the status quo pending litigation of the issues involving the alleged option backdating claims." *Id.*

*Caremark* does not convince the Court that the requested preliminary relief is necessary in this instance for two reasons. First, the *Caremark* decision concludes that shareholders would likely suffer irreparable harm absent the grant of preliminary equitable relief. *Id.* ¶ 9. As discussed in Section II.C.2.b, *infra*, that is not the scenario here. Second, *Caremark*, as an unpublished, Tennessee state court decision that did not fully elucidate the facts or its reasoning, is of limited persuasiveness here in view of the significant distinction that this case, in relevant part, does not involve a class action or settlement

agreement. Rather, this case involves derivative claims and a multi-billion dollar merger subject to a shareholder vote as Defendants purported attempt "to evade or impede this Court's ability to adjudicate the merits of Plaintiffs' ... claims." *Id.* ¶ 5.

Accordingly, because the Court continues to harbor substantial doubts that Plaintiffs' requested remedies properly maintain the status quo where a merger extinguishes derivative standing through operation of law, the Court will not grant such relief under the guise of equity.[22]

**b. Plaintiffs Have Not Shown a Significant Threat of Irreparable Injury to Warrant Preliminary Equitable Relief.**

 Setting aside the anomalous equitable remedies sought here, Plaintiffs have not shown a significant threat of irreparable injury, a central requirement for the issuance of preliminary injunctive relief and the constructive trusts sought here. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985); *Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir.2007); *Sequa Corp. v. Gelmin*, No. 91 Civ. 8675 DAB, 1995 WL 404726, at *4 (S.D.N.Y. Jul. 7, 1995) ("There is no substantial support for plaintiffs' contention that proof of likely success on a constructive-trust claim is sufficient without a showing of irreparable harm-to earn them an injunction").

Plaintiffs' primary argument for irreparable harm is that consummation of the

---

22. The Court is not suggesting that equitable relief, preliminary or otherwise, is never suitable to remedy allegations of the type made here. It is merely observing that Plaintiffs' requests *to extract* these derivative "assets" from the transaction appears to disturb the status quo, by interfering with well-settled principles of corporate law, more than it does preserve it. In this motion, Plaintiffs are not seeking a preliminary injunction as to the transaction. *See* Mar. 20 Hearing Transcript,

at 13:11–13:13. The Complaint also does not seek to enjoin the vote pending modification of the disclosure to include all relevant information regarding the derivative suits, as do other suits. *See, e.g., Freedman*, Del. Compl. Prayer for Relief (3), (6). *See generally Kohls v. Duthie*, 765 A.2d 1274, 1287 (Del.Ch.2000) (describing the extensive disclosures about derivative claims made to shareholders prior to a shareholder vote on a transaction).

merger will extinguish their derivative standing by operation of law.[23] However, the impending Bank of America merger does not create a significant risk of "irreparable" harm. First, the terms will be subject to shareholder vote; thus, should the terms inadequately account for the value of the derivative suits, shareholders have the ability to vote against the transaction. More importantly, other proceedings contemplate the extinction of the derivative suits and already seek equitable and legal remedies, as necessary, for shareholders to the extent that the derivative suits are not properly valued by the acquisition price. Plaintiffs' standing in those class action cases will not be extinguished upon consummation of the merger.

For instance, the *Freedman* plaintiffs expressly allege that the proposed terms "fail[ ] to adequately value the derivative claims, estimated to be worth approximately $2 billion, which are important Countrywide assets and should inure to the benefit of its shareholders," and expressly recognize that plaintiffs "may lose standing to assert derivative claims" following the merger. Del. Compl. ¶ 66 (quotations omitted). In addition to equitable relief, which could affect the merger itself, the plaintiffs there also seek damages as necessary. Del. Compl. Prayer for Relief.

Plaintiffs here argue that "the class action claims do not encompass the claims or relief sought by Plaintiffs" and "many of the claims in this case are not—and cannot—be asserted by plaintiffs in the securities class actions." Pls.' Repl. In Supp. Mot. Constr. Trust And Prelim. Inj., at 20. *See also* Mar. 20 Hearing Transcript, at 76:14–76:19 (Plaintiffs' Counsel stating that damage claim relating to merger itself and derivative claim is "comparing apples to oranges"). They also contend that "the derivative claims seek recovery for the harm caused to the Company itself, and any recovery would benefit *present* shareholders, whereas the "various securities class actions . . . seek[ ] recovery on behalf of persons who purchased Countrywide stock during a certain class period." Pls.' Repl. In Supp. Mot. Constr. Trust And Prelim. Inj., at 20. These arguments have marginal merit, but are insufficient to persuade the Court to reach Plaintiffs' conclusion on this issue.

The latter point is simply inaccurate with respect to *Freedman*, as the class there is designated as "all public share *holders* " of Countrywide, Del. Compl. ¶ 25 (emphasis added), which *are* the "present shareholders." In addition, though the *Freedman* court will not adjudicate Plaintiffs' claims derivatively, it has the ability to *evaluate* those claims to ascertain the appropriate equitable or legal remedy for the benefit of shareholders of Countrywide, whose shares are to be extinguished in the Bank of America acquisition. If the *Freedman* court does not grant equitable relief, ex-Countrywide shareholders damaged by a merger price that does not adequately value these derivative suits can subsequently be compensated for their interest in those suits by the class action suits against *the same Defendants*.[24]

---

23. Defendant Dougherty points out that Plaintiffs' have not presented any arguments or proffered any evidence regarding his dissipation of these "ill-gotten" assets that might warrant a constructive trust over those assets at this time. Dougherty Mem. In Opp. Pls.' Mot. At 10–11. The Court agrees, and observes that Plaintiffs have failed to make such a showing—whether specific or general—for any of the Defendants. In support of their argument for recognition of a constructive trust over the "ill-gotten" assets, Plaintiffs rely solely on the argument that irreparable harm will follow if their derivative standing is extinguished upon consummation of the merger.

24. The Court here *only* concludes that Plaintiffs have not shown a significant risk of "irreparable" injury given that the "injury" to

Because *Freedman* is addressing the "harm" that might be caused to present Countrywide shareholders by the extinction of derivative standing under the proposed merger terms, Plaintiffs do not demonstrate a significant threat of irreparable harm. The proceedings in Delaware are adequately positioned to provide equitable or legal relief as appropriate; accordingly, consummation of the transaction, if and when it occurs, will properly transfer the "asset" of the derivative suits to Bank of America under Delaware law or provide a remedy to shareholders. At that point, the only interest going forward for ex-Countrywide shareholders in these derivative suits will be their interest as Bank of America shareholders.[25]

As the Court cannot conclude that Plaintiffs have shown a significant risk of "irreparable" harm, it declines to grant equitable relief here. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir.1985) ("Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury.")[26] This result applies both to Plaintiffs' request for a preliminary injunction, and their alternate request for recognition of a constructive trust over Defendants "ill-gotten" assets.

### D. Plaintiffs' Motion for Expedited Discovery

▮▮▮▮ Plaintiffs request expedited discovery in support of both their Motion for Constructive Trust and Preliminary Injunction and the claims alleged in the Complaint. They argue that exigent circumstances, namely the pending merger of Countrywide with Bank of America, support accelerating discovery in this case. Furthermore, they suggest that the PSLRA's automatic stay of discovery should not apply here, because it "contains primarily derivative claims." Pls.' Mem. In Supp. Mot. for Expedited Discovery ("Pls.' Exped. Disc. Mem."), at 10. Finally, even if the stay does apply to derivative actions that assert federal securities claims like this one, Plaintiffs argue that their discovery requests are sufficiently "particularized" and such requests are warranted given (i) the risk that documents might be lost in the disorganized chaos of the upcoming merger and (ii) the "undue prejudice" that would result from the PSLRA stay.

In response, Defendants urge that the PSLRA stay of discovery should apply—not only to deny expedited discovery in this case, but also to stay the preliminary injunction motion itself. They emphasize, in particular, that Plaintiff's have not shown undue prejudice, and that Plaintiff's document requests are more "blunderbuss" than they are "particularized". Defs.' Repl. In Further Supp. Of Mot. Stay, at 9.

---

shareholders created by the extinction of the derivative suits is already within the purview of other courts.

**25.** Of course if the "assets" do transfer to Bank of America, that company's management owes fiduciary duties to all Bank of America shareholders in making any determinations with respect to pursuing these allegations. Further, the premise that Bank of America could somehow provide blanket indemnification for Countrywide directors for liability in connection with the allegations in

these derivative suits, thereby eliminating any liability whatsoever, appears to be unfounded. Any indemnification of directors in derivative suits is limited by the requirements of Delaware law. Del.Code Ann. tit. 8, § 145(b). This remains true in the merger context. *Id.* § 145(h).

**26.** Because the lack of a significant risk of irreparable injury here precludes the issuance of equitable relief, the Court declines to address the other factors.

## 1. Legal Standard

■ In 1995, Congress enacted the PSLRA, 15 U.S.C. 78u–4, to curtail "abusive and manipulative securities litigation," H.R.Rep. No. 104–369 at 32 (1995), 1995 U.S.Code Cong. & Admin.News. 730, 731, including frivolous or meritless class actions. The PSLRA requires "[i]n *any* private action arising under this chapter" that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss" unless "the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B). Thus, where the PSLRA stay applies, no discovery, expedited or otherwise, may occur prior to the resolution of the motion to dismiss.

■ Where the PSLRA stay does not apply, formal discovery is generally allowed only after "the parties have conferred as required by [Federal Rule of Civil Procedure] 26(f)." Fed.R.Civ.P. 26(d). However, courts may permit expedited discovery before the Rule 26(f) conference upon a showing of good cause. *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273 (N.D.Cal.2002). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276.

## 2. Analysis

For the reasons that follow, the Court finds that the PSLRA applies to stay the derivative claims and Plaintiffs have not demonstrated the need for an exception to the PSLRA stay.[27]

### a. The PSLRA Stay Applies to Derivative Actions that Assert Federal Securities Claims.

Plaintiffs suggest in passing that the PSLRA discovery stay should not apply to an action that "contains primarily derivative claims,"[28] Pls.' Exped. Disc. Mem., at 10, and they point out that no circuit court has addressed the issue. However, the plain language of the stay provision clearly encompasses any action that asserts claims under the 1934 Securities Exchange Act. *See In re Marvell Tech. Group, Ltd. Deriv. Litig.,* No. C–06–03894 RMW, 2007 WL 1545194, at *2 (N.D.Cal. May 29, 2007) (noting that 15 U.S.C. § 78u–4(b) applies to "any private action arising under this *chapter,*" a reference to the 1934 Act codified at 15 U.S.C. § 78a *et seq.*). Here, Plaintiffs assert derivative claims that arise under §§ 10(b), 20(a), 20A, and 14(a) of the 1934 Act that are clearly subject to the stay. While no circuit court has addressed this issue, district courts have frequently applied the PSLRA to stay discovery in shareholder derivative actions that allege violations of federal law. *See In re Altera Corp. Deriv. Litig.,* No. C 06–03447 JW, 2006 WL 2917578 (N.D.Cal. Oct. 11, 2006) (finding a stay in derivative action consistent with the purposes underlying SLUSA) (citing *Erickson v. Horing,* 2000 WL 35500986, at *5–*7, 2000 U.S. Dist. LEXIS 22432, at *19–*23 (D.Minn. Oct. 23, 2000)); *In re Trump Hotel Shareholder Deriv. Litig.,* No. 96CIV.7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) (noting that the plain language of the stay

---

**27.** Because the Court has denied Plaintiffs' Motion for Constructive Trust and Preliminary Injunction, in Section II.C, *supra,* it does not need to decide whether the PSLRA stay would extend to a hearing on the preliminary injunction issue.

**28.** The Court notes that discovery relating to Plaintiffs' class action claims is not at issue here. As established in Section II.A, *supra,* the Court stays those claims under the *Colorado River* doctrine.

provision is not limited to class actions); *Melzer v. CNET Networks, Inc.,* No. C 06–03817 WHA, 2006 WL 3716477, at *2 (N.D.Cal. Dec. 15, 2006) (citing numerous district courts reaching same conclusion).

Likewise, Plaintiffs' state law derivative claims, which arise under Delaware common law and Cal. Corp.Code § 25402, are subject to the PSLRA stay, which applies to state law claims over which the Court has asserted 28 U.S.C. § 1367 supplemental jurisdiction. *See SG Cowen Sec. Corp. v. U.S. Dist. Court,* 189 F.3d 909, 913 n. 1 (9th Cir.1999) ("Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims.") (quotations omitted).

Thus, because this Court finds that the stay provision applies here, and discovery must therefore be stayed pending to motion to dismiss, it does not reach the issue of whether plaintiffs have shown "good cause."

**b. Plaintiffs' Discovery Requests Are Not Sufficiently "Particularized" to Qualify for Exception from the PSLRA Stay on Discovery.**

■ Plaintiffs have not shown that "that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party" under 15 U.S.C. § 78u–4(b)(3)(B). Here, Plaintiffs' requested discovery is not just a "mere[ ] ... handful" of document requests," Pls.' Exped. Disc. Mem. at 8, and quite simply, is not even remotely particularized.

■ While they suggest discovery will "primarily include materials produced in parallel proceedings" whose production will pose a "minimal" burden on the Defendants, Plaintiffs do not limit their document requests in line with that characterization.[29] For example, Plaintiffs have requested documents, reaching back to January 1, 2004, that are related to Countrywide board meetings and "describe[e], discuss[ ], evidenc[e], reflect[ ], form[ ] the basis of, or constitut[e]" Countrywide's lending business; its accounting policies and methods; credit risk assessment and

---

**29.** This is not to say that discovery requests that are limited to items produced in other proceedings are necessarily "particularized." It is possible that documents previously produced in government investigations or other litigation may in fact be irrelevant to the claims asserted in *this* case. *See In re American Funds Securities Litigation,* 493 F.Supp.2d 1103, 1106–7 (C.D.Cal.2007) (citing *In re Fannie Mae Securities Litigation,* 362 F.Supp.2d 37, 39 (D.D.C.2005)). Moreover, the fact that discovery has commenced in other proceedings is insufficient, standing alone, to constitute "undue prejudice." The Court emphasizes that there is no "categorical exception" to the PSLRA discovery stay for documents that have already been provided to a governmental agency or other private parties. *Rampersad v. Deutsche Bank Sec. Inc.,* 381 F.Supp.2d 131, 133–34 (S.D.N.Y. 2003). *See also In re Fannie Mae Sec. Litig.,* 362 F.Supp.2d at 39 ("The plaintiffs here argue that the partial lifting of the stay is neces-

sary to prevent unfair prejudice because without this discovery they will be unable to plan their litigation strategy and thus will not be on equal footing with the regulatory authorities who have already received documents.... This argument, however, fails to demonstrate that the defendants will be either unfairly shielded from liability, or that the plaintiffs would be disadvantaged during possible settlement negotiations."); *In re Am. Funds Sec. Litig.,* 493 F.Supp.2d 1103, 1105–7 (C.D.Cal.2007) (Feess, J.) (without more, fact that defendants had produced documents to California Attorney General and possibly to other private parties was not "undue prejudice" that warranted lifting of stay); *In re Vivendi Universal, S.A. Securities Litigation,* 381 F.Supp.2d 129, 130–31 (S.D.N.Y.2003) (denying plaintiffs' motion to lift PSLRA stay even though the same documents were previously provided in the course of various civil and criminal investigations in the U.S. and France).

management; hedging activities; board and management compensation; securities transactions; or 10b5–1 plans. Pls.' Proposed First Request for Prod. Of Docs., Nicholas Decl. Exh. B, at 3, 5–7. These are exceedingly broad and far-reaching requests that may or may not overlap with the discovery requested in *Garber,* in the ERISA cases, and in Delaware Chancery Court, and simply cannot be viewed as particularized. *See also* Defs.' Repl. In Further Supp. Of Mot. Stay, at 10 (characterizing requests as "covering virtually every aspect of Countrywide's business stretching back more than four years").

 Because the lack of particularity in Plaintiffs' discovery requests precludes exception from the PSLRA stay, the Court declines to address the other prongs of the test. However, the Court grants Plaintiffs leave to refile a motion for expedited discovery that is narrow enough to meet the requirements of the exception.[30]

### III.

### CONCLUSION

For the foregoing reasons, the Court stays the merger-related class action claims in *Arkansas Teachers* in favor of substantially similar litigation proceeding in the Delaware Court of Chancery. Remaining for this Court's adjudication are Plaintiffs' derivative claims, embodied in Counts I–IX of the Complaint.

The Court denies Plaintiffs' Motion for Constructive Trust and Preliminary Injunction, thereby declining to grant preliminary equitable relief. The Court reaches no decision at this time on Plaintiffs' request to schedule trial prior to the consummation of the merger.

The Court also denies Plaintiffs' Motion for Expedited Discovery, and concludes that at this juncture, the PSLRA mandates the stay of discovery in *Arkansas Teachers.* Finally, the Court does not reach Defendants' Motion to Stay Proceedings in the *Garber* case proceeding in Los Angeles Superior Court, as Judge Chaney appears to have made any action by this Court unnecessary.

IT IS SO ORDERED.

---

30. The Court observes that the "undue prejudice" prong of the PSLRA exception requires a showing of improper or unfair detriment, which need not reach the level of irreparable harm. *In re Lernout & Hauspie Sec. Litig.,* 214 F.Supp.2d 100, 107 (D.Mass.2002) (citing *Med. Imaging Ctrs. Of Am. v. Lichtenstein,* 917 F.Supp. 717, 720 (S.D.Cal.1996)). Nonetheless, should the Plaintiffs again seek expedited discovery under the exception to the PSLRA, they should at least consider the Court's comments on irreparable harm in Section II.C, *supra.*